IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| SHAWN SAKI, individually and on behalf of her minor child, RAIME SAKI, | CIVIL NO. 07-00209 JMS/LEK |
| Plaintiffs, | ORDER REVERSING IN PART THE HEARINGS OFFICER'S MARCH 23, 2007 FINDINGS OF FACT, CONCLUSIONS OF LAW AND DECISION, AND ORDERING REIMBURSEMENT PURSUANT TO STAY PUT |
| vs. | |
| STATE OF HAWAII, DEPARTMENT OF EDUCATION and PAT HAMAMOTO, in her official capacity as Superintendent of the Hawaii Public Schools, | |
| Defendants. | |

**ORDER REVERSING IN PART THE HEARINGS OFFICER'S MARCH 23, 2007 FINDINGS OF FACT, CONCLUSIONS OF LAW AND DECISION, AND ORDERING REIMBURSEMENT PURSUANT TO STAY PUT**

## I. INTRODUCTION

On April 20, 2007, Plaintiffs Shawn Saki ("Mother"), individually and on behalf of her minor child, Raime Saki ("Student") (collectively "Plaintiffs"), filed a Complaint under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415, seeking a partial reversal of the Administrative Hearings Officer's March 23, 2007 Findings of Fact, Conclusions of Law and Decision ("March 23, 2007 Order"). In her March 23, 2007 Order, the Hearings

Officer found that a May 31, 2006 Individual Education Plan ("IEP") did not offer Student a free appropriate public education ("FAPE"), while an August 7, 2006 IEP did offer Student a FAPE.

Plaintiffs raise two issues on appeal.  First, Plaintiffs argue that the Hearings Officer did not have subject matter jurisdiction over the August 7, 2006 IEP because Plaintiffs did not raise it in their August 28, 2006 Notice of Hearing. Second, Plaintiffs argue that Defendant Department of Education ("DOE") improperly refused to reimburse Plaintiffs for educational expenses incurred during the time between the March 23, 2007 Order and service of the Complaint in this action, as required by the IDEA's "stay put" provision, 20 U.S.C. § 1415(j).

Based on the following, the court REVERSES IN PART the March 23, 2007 Order to the extent it found that the August 7, 2006 IEP offered Student a FAPE.  The court further finds that Plaintiffs are entitled to reimbursement for their educational expenses to keep Student at Educational Therapies, Inc. ("Private School") from March 23, 2007 through service of the Complaint pursuant to the IDEA's stay put provision.

///

///

///

2

## II. **BACKGROUND**

Student is eligible for special education under the IDEA.

Administrative Record on Appeal ("ARA") 24, at 87.[1]  During the 2005-2006

school year, Student was placed at Private School pursuant to a settlement

agreement between the parties.  *Id.* at 87 n.2.

On May 31, 2006, an IEP meeting was convened for Student.  The

May 31, 2006 IEP offered Student:

> (1) Extended School Year ("ESY") academic services after 10
> non-instructional school days for 4 hours per day and ESY
> counseling services weekly, after 10 non-instructional days;
> (2) special education services for 1,000 minutes per week;
> (3) 40 minutes per week of counseling services; (4) 40 minutes
> per week of speech services; (5) 9 supplementary aids and
> services, program modifications and supports for school
> personnel to assist and supervise Student, to address her speech
> and communication and sensory issues, and to support her
> participation in the regular education setting.

*Id.* at 88.  For the most part, these services were to begin on June 1, 2006 and end

on May 31, 2007.  ARA Resp't Ex. 12.  During the meeting, Mother provided a

list of concerns, and also informed the Principal via letter dated June 1, 2006 that

she disagreed with what the DOE had offered Student in the May 31, 2006 IEP.

---

[1]  Because Plaintiffs raise only limited objections to the March 23, 2007 Order, the court outlines only those facts relevant to the appeal.  A more detailed recitation of the all of the issues and background facts may be found in the March 23, 2007 Order.

ARA 24, at 89-90.  On July 3, 2006, Mother provided a letter to Principal specifying her problems with the May 31, 2006 IEP.  *Id.* at 93.

On July 28, 2006 and August 7, 2006, the parties held another IEP meeting.  The August 7, 2006 IEP offered Student:

> (1) ESY academic services after 5 non-instructional school days for 4 hours per day; (2) special education services for 400 minutes per week; (3) 40 minutes per week of counseling services until September 29, 2006; (4) speech language services for 360 minutes per quarter; (5) 21 supplementary aids and services, program modifications and supports for school personnel to assist and supervise Student, to address her speech and communication, occupational therapy, and sensory issues, and to support her participation in the regular education setting; and (6) Student will participate in special education for English and Math.

*Id.* at 94.  Those services that were in addition to those offered in the May 31, 2006 IEP were to begin on August 8, 2006 and end on May 31, 2007.  ARA Resp't Ex. 38.

On August 28, 2006, Defendants received Plaintiffs' Request for Impartial Hearing ("August 28, 2006 Notice").  The August 28, 2006 Notice identified the following concerns regarding the May 31, 2006 IEP:

1. Placement of [Student] in an overly restrictive environment.  Student could have been in general education for Health class, Science and Social Studies.
2. Student required speech goals to address her deficits.
3. Student required Occupational Therapy.

4

4.   IEP did not identify length of ESY instructional day.
ESY break should have been for 5 days not 10.

5.   Parent was denied access to student's record when DOE
refused to release Hand-written IEP conference notes for
review by parent.  This inhibited parent's participation in
IEP development process.

6.   Student is entitled to continued funding of her private
school placement under the 'stay put' provision during
the pendency of litigation.

ARA 1.  The August 28, 2006 Notice sought reimbursement for "all costs in the

provision of <u>private school</u> education and related services (including

Transportation), as well as financing costs."  *Id.*

On September 6, 2006, the DOE responded to the August 28, 2006

Notice.  ARA 4.  The DOE asserted, among other things, that:

The DOE has already addressed the concerns raised by
Petitioners.  It is not clear why Petitioners are challenging the
May 31, 2006 IEP because the DOE offered Petitioners a free
appropriate education ("FAPE") **after** May 31, 2006, but
**before** Petitioners filed a request for hearing in this case.  On
August 7, 2006, the DOE offered Petitioners a FAPE . . . .

*Id.*  The DOE also stated that it "is not challenging the stay put placement."  *Id.*

A hearing was held on October 19, 2006.  During the hearing,

Plaintiffs raised the issue of reimbursement pursuant to the stay put provision of

the IDEA, ARA Oct. 19, 2006 Tr. 142, and filed a Motion for Stay Put on October

20, 2006.  ARA 9.  In the Motion, Plaintiffs requested that the DOE fund

Student's "current educational placements during the pendency of this administrative hearing." *Id.* On November 8, 2006, the DOE informed Plaintiffs that it "acknowledges Stay Put as of the time of filing and will assist Petitioners in the matter of reimbursement and payment of tuition fees."[2] ARA 15.

On January 12, 2007, the Hearings Officer held an additional day of hearing, and on March 2, 2007, the parties filed their Closing Briefs. The DOE's Closing Brief identified the following "Issue Presented":

> Petitioner's request for due process hearing alleges that the May 31, 2006 IEP does not offer Student a FAPE because it: 1) places student in an overly restrictive environment, 2) Student required speech goals for her deficits, 3) IEP did not identify the length of the ESY instructional day and should have been for breaks longer than 5 days versus 10 days, and 4) Mother was denied access to handwritten notes.

ARA 21, at 58. In a footnote, the DOE again observed that:

> It is unclear why Petitioners filed this hearing request because the May 31, 2006 IEP did properly address Mother's concerns and Student's known needs. With the additional information and clarification of Mother's additional concerns, the August 7, 2006 IEP offered a FAPE as it addressed those exact issues that Mother raised and therefore the equitable remedy sought, reimbursement for the private tutoring, would not be appropriate and would certainly not be appropriate beyond August 7, 2006.

---

[2] Because the parties ultimately agreed on the Stay Put, the Hearings Officer made no findings regarding this issue.

*Id.* at 69.  In their Closing Brief, Plaintiffs discussed facts regarding both IEPs.

ARA 22, at 78.

The Hearings Officer issued her Order on March 23, 2007.  The

March 23, 2007 Order identified the issue presented as "[w]hether the May 31,

2006 [IEP] offered Student a [FAPE]?"  ARA 24, at 86.  The March 23, 2007

Order explained, however, that:

> In presenting their case, Petitioners relied on the subsequent
> IEP developed for Student on August 7, 2006.  Although the
> sufficiency of the August 7, 2006 IEP was not raised in
> Petitioners' August 28, 2006 request for an impartial hearing,
> Petitioners used the August 7, 2006 IEP and related documents
> to show how the May 31, 2006 IEP was not an offer of a FAPE.
> Petitioners and Respondent agreed to have the Hearings Officer
> consider the August 7, 2006 IEP, and its related documents, as
> evidence in this matter.

*Id.* at 100.  The Hearings Officer, however, did not limit her consideration of the

August 7, 2006 IEP to the issue of whether the May 31, 2006 IEP offered Student

a FAPE.  Specifically, the Hearings Officer found that the May 31, 2006 IEP did

not offer Student a FAPE, and the August 7, 2006 IEP did offer Student a FAPE.

*Id.* at 100, 102.  In other words, the Hearings Officer made a determination, under

the heading "Decision," that the August 7, 2006 IEP offered Student a FAPE.  The

Hearings Officer further "ordered that (1) Petitioners are entitled to reimbursement

for Student's educational costs at Private School from May 31, 2006 to and

7

including August 7, 2006, and (2) Petitioners are deemed the prevailing party in this matter."  *Id.* at 103.

On April 20, 2007, Plaintiffs filed their Complaint with this court, and served Defendants on August 13, 2007.  Plaintiffs filed their Opening Brief on February 21, 2008, and Defendants filed their Responsive Brief on March 24, 2008.[3]  A hearing was held on April 21, 2008.

### III.  **STANDARD OF REVIEW**

The IDEA provides that "[a]ny party aggrieved by the findings and decision" of the hearings officer "shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy."  20 U.S.C. § 1415(i)(2)(A).

The IDEA requires the following of the court:

> In any action brought under this paragraph, the court --
> (i)  shall receive the records of the administrative proceedings;
> (ii)  shall hear additional evidence at the request of a party; and

---

[3]  Plaintiffs opted not to file an optional Reply Brief.

> (iii) basing its decision on the preponderance of the
> evidence, shall grant such relief as the court determines
> is appropriate.

*Id.* § 1415(i)(2)(C).  In *Board of Education of Hendrick Hudson Central School District v. Rowley*, 458 U.S. 176, 206-07 (1982), the Supreme Court explained the court's role in reviewing an administrative decision in an IDEA case:

> [T]he provision that a reviewing court base its decision on the
> "preponderance of the evidence" is by no means an invitation
> to the courts to substitute their own notions of sound
> educational policy for those of the school authorities which
> they review.  The very importance which Congress has attached
> to compliance with certain procedures in the preparation of an
> IEP would be frustrated if a court were permitted simply to set
> state decisions at nought.  The fact that § 1415(e)[4] requires
> that the reviewing court "receive the records of the [state]
> administrative proceedings" carries with it the implied
> requirement that due weight shall be given to these
> proceedings.  And we find nothing in the Act to suggest that
> merely because Congress was rather sketchy in establishing
> substantive requirements, as opposed to procedural
> requirements for the preparation of an IEP, it intended that
> reviewing courts should have a free hand to impose substantive
> standards of review which cannot be derived from the Act
> itself.  In short, the statutory authorization to grant "such relief
> as the court determines is appropriate" cannot be read without
> reference to the obligations, largely procedural in nature, which
> are imposed upon recipient States by Congress.

*See also City of Chi. v. Int'l Coll. of Surgeons*, 522 U.S. 156, 171 (1997) (citing *Rowley* for the proposition that the IDEA "contemplates deferential review of state

---

[4] This provision now appears at 20 U.S.C. § 1415(i).

9

administrative action").  The "fact-intensive nature" of IDEA proceedings

"coupled with considerations of judicial economy render a more deferential

approach appropriate."  *Hood v. Encinitas Union Sch. Dist.*, 486 F.3d 1099, 1104

n.4 (9th Cir. 2007).

The Ninth Circuit has explained that despite this deferential approach,

the court has discretion in reviewing the hearings officer's decision:

> The proposition that the courts must give "due weight"
> raises the question of how much weight is "due."  We held in
> *Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1311 (9th
> Cir. 1987), that "[h]ow *much* deference to give state
> educational agencies . . . is a matter for the discretion of the
> courts."  Following a First Circuit decision, we held in *Gregory
> K.* that the courts are to consider the findings "carefully and
> endeavor to respond to the hearing officer's resolution of each
> material issue," but the court "is free to accept or reject the
> findings in part or in whole."  *Id.*
>
> When exercising its discretion to determine what weight
> to give the hearing officer's findings, one criterion we have
> found useful is to examine the thoroughness of those findings.
> The amount of deference accorded the hearing officer's
> findings increases where they are "thorough and careful."

*Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 891 (9th Cir. 1995)

(citations omitted; alterations in original); *see also Ms. S. v. Vashon Island Sch.*

*Dist.*, 337 F.3d 1115, 1126 (9th Cir. 2003) ("The 'due weight' to be given is

within the discretion of the appellate court." (*superseded on other grounds by* 20

U.S.C. § 1414(d)(1)(B))).

The burden in this proceeding is on Plaintiffs, the party challenging the administrative ruling. *Seattle Sch. Dist., No. 1 v. B.S.*, 82 F.3d 1493, 1498 (9th Cir. 1996) ("As the party challenging the administrative ruling, the School District . . . had the burden of proof in district court.").

## IV.  DISCUSSION

### A.    Scope of March 23, 2007 Order

Plaintiffs argue that the Hearings Officer was prohibited from determining whether the August 7, 2006 IEP offered Student a FAPE because Plaintiffs did not raise this issue in their August 28, 2006 Notice.  Defendants disagree, arguing that the August 7, 2006 IEP was before the Hearings Officer because the parties introduced it into evidence and discussed it during the hearing. The court first outlines the relevant legal framework, and then determines that based on this framework, the Hearings Officer erred in determining whether the August 7, 2006 IEP offered Student a FAPE.

### 1.    *Legal Framework*

The IDEA provides a party with the opportunity to present a complaint "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public

11

education to such child."  20 U.S.C. § 1415(b)(6)(A).  The Supreme Court

explains that:

> By presenting a complaint a party is able to pursue a process of
> review that, as relevant, begins with a preliminary meeting
> "where the parents of the child discuss their complaint" and the
> local educational agency "is provided the opportunity to [reach
> a resolution]."  § 1415(f)(1)(B)(i)(IV).  If the agency "has not
> resolved the complaint to the satisfaction of the parents within
> 30 days," § 1415(f)(1)(B)(ii), the parents may request an
> "impartial due process hearing," § 1415(f)(1)(A), which must
> be conducted either by the local educational agency or by the
> state educational agency, *ibid*., and where a hearing officer will
> resolve issues raised in the complaint, § 1415(f)(3).

*Winkelman ex rel. Winkelman v. Parma City Sch. Dist*., 127 S. Ct. 1994, 2001

(2007).

If a party disagrees with a hearings officer's determination, the IDEA

allows that party to bring a civil action:

> Any party aggrieved by the findings and decision . . . shall have
> the right to bring a civil action with respect to the complaint
> presented pursuant to this section, which action may be brought
> in any State court of competent jurisdiction or in a district court
> of the United States, without regard to the amount in
> controversy.

20 U.S.C. § 1415(i)(2)(A).

*County of San Diego v. California Special Education Hearing Office*,

93 F.3d 1458, 1464-65 (9th Cir. 1996), interpreted the provisions of the IDEA to

determine whether a hearings officer erred in refusing to consider the respondent's

challenge to a student's disabled status, where the petitioner did not raise that issue in the complaint.  The Ninth Circuit found that the hearings officer properly limited the hearing to issues presented in the petitioner's complaint only.  *County of San Diego*, 93 F.3d at 1464-65.

In making this determination, *County of San Diego* relied on the following provisions of the IDEA: (1) § 1415(b)(6)(A), providing that a petitioner may present a complaint "with respect to any matter relating to . . . ;" (2) § 1415(f)(1)(A), providing that the parties "involved in such complaint shall have an opportunity for an impartial due process hearing;" and (3) § 1415(i)(2)(A), providing that an aggrieved party may "bring a civil action with respect to the complaint."[5]  *County of San Diego* explained that these provisions, when read together, limited a hearings officer to those issues raised in the complaint only:

> [S]ection [1415(i)(2)(A)] must be read in conjunction with section [1415(f)(1)(A)].  Section [1415(i)(2)(A)] only gives the [respondent] the right to sue [student] for what she and her mother contest against it at an administrative hearing.  The scope of the administrative hearing mandated by section

---

[5]  At the time of *County of San Diego*, an earlier version of the IDEA was in effect. However, the current version of the IDEA includes the same language that *County of San Diego* found relevant in its analysis, but in different sections.  The court therefore cites to the current section numbers in the text of this Order.  Section 1415(b)(6)(A) was previously § 1415(b)(1)(E); § 1415(f)(1)(A) was previously § 1415(b)(2); and § 1415(i)(2)(A) was previously § 1415(e)(2).

> [1415(f)(1)(A)] is limited to the "complaint" raised to obtain the hearing.
>
> . . .
>
> The phrase "any matter relating to" [in § 1415(b)(6)(A)] might be construed to permit a broad array of issues.  However, the judicial review provision cannot expand a party's rights beyond what may be raised at the hearing.  The limiting phrase "with respect to a complaint presented pursuant by this section" [in § 1415(i)(2)(A)] allows the [respondent] to contest against [petitioner] only what [petitioner] may raise against it in an administrative hearing.  Because [petitioner's] complaint at the administrative hearing addressed only the right to residential placement, we conclude that the [respondent] is precluded from challenging the [disability] determination.

*County of San Diego*, 93 F.3d at 1465 (emphasis added).

## 2.  *Application of Framework*

Plaintiffs requested a hearing to address their concerns regarding the May 31, 2006 IEP.  ARA 1.  Plaintiffs did not, however, request a hearing regarding the August 7, 2006 IEP.  Based on *County of San Diego*, Defendants could not insert the August 7, 2006 IEP as an additional issue for the Hearings Officer to determine.[6]  Defendants were limited to contesting what Plaintiffs raised

---

[6] *County of San Diego* involved a different procedural posture and issue than this case.  The County tried to adjudicate the issue of the student's disability status, but the hearings officer refused to hear this issue, as did the district court on appeal.  *County of San Diego* thus addressed whether the district court erred in ruling that the County could not challenge the student's disability classification in an appeal to the district court.  *County of San Diego v. Cal. Special Educ. Hearing Office*, 93 F.3d 1458, 1464-65 (9th Cir. 1996).  While distinguishable, *County of San Diego* is nonetheless relevant to the court's analysis and stands for the proposition that the complaint controls the scope of an administrative hearing.  *See id.* at 1465.

in their complaint, *i.e.*, the May 31, 2006 IEP.[7]  *See id.* ("Section [1415(i)(2)(A)] only gives the [respondent] the right to sue [student] for what she and her mother contest against it at an administrative hearing.").  Accordingly, the Hearings Officer erred in determining whether the August 7, 2006 IEP offered a FAPE.

The court rejects each of Defendants' arguments for a contrary ruling. Defendants first argue that Plaintiffs agreed that the August 7, 2006 IEP would be an issue for the hearing, based on § 1415(f)(3)(B), which states that "[t]he party requesting the due process hearing shall not be allowed to raise issues at the due process hearing that were not raised in the notice filed under subsection (b)(7) of this section, unless the other party agrees otherwise."  Defendants argue that Plaintiffs agreed that the August 7, 2006 IEP would be an issue because both parties referred to the August 7, 2006 IEP at the hearing, and submitted it as an exhibit.  The court disagrees.

---

[7]  The court recognizes that Defendants raised the August 7, 2006 IEP in their answer to Plaintiff's August 28, 2006 Notice of Hearing.  *See* ARA 4 ("It is not clear why Petitioners are challenging the May 31, 2006 IEP because the DOE offered Petitioners a ["FAPE"] **after** May 31, 2006, but **before** Petitioners filed a request for hearing in this case.  On August 7, 2006, the DOE offered Petitioners a FAPE . . . .").  The court does not rule out that in some instances, a respondent's answer may raise issues related to the complaint.  In this instance, however, Defendants raised a wholly separate IEP.  While the two IEPs addressed overlapping time periods, determining whether the August 7, 2006 IEP offered Student a FAPE was not necessary to determine whether the May 31, 2006 IEP offered Student a FAPE.  Instead, it was relevant evidence to the issue of the Notice of Hearing -- whether the May 31, 2006 IEP offered Student a FAPE.

As an initial matter, a plain reading of § 1415(f)(3)(B) prevents only "the party requesting the due process hearing" from raising any new issues; it does not address whether a *respondent* may raise new issues.  That a petitioner cannot raise issues outside the complaint is well-established.  *See M.T.V. v. DeKalb County Sch. Dist.*, 446 F.3d 1153, 1159 (11th Cir. 2006) ("To pursue claims for retaliation, the plain language of the IDEA required Appellants to file a separate administrative complaint to raise that issue and exhaust all administrative remedies regarding that complaint before filing a judicial action.  They failed to do so."); *Metro. Bd. of Pub. Educ. v. Guest*, 193 F.3d 457, 463 (6th Cir. 1999) (concluding that the district court has no authority to review IEPs when the petitioner does not seek review of the IEPs in the administrative hearing); *Matthew L. v. Dep't of Educ.*, 2007 WL 3331663, at *1 (D. Haw. Nov. 9, 2007) (noting that prior decision in the case "ruled that Plaintiffs would not be allowed to 'piggy back' this second claim relating to the 2005-2006 school year to the due process hearing"); *Dep't of Educ., State of Haw. v. Cari Rae S.*, 158 F. Supp. 2d 1190, 1195 (D. Haw. 2001) ("[A]lthough additional evidence in IDEA review proceedings is allowed, this does not authorize introducing entirely new issues that were not included in the original administrative complaint." (*citing County of San Diego*, 93 F.3d at 1465)); *Bruschini v. Bd. of Educ. of the Arlington Cent. Sch. Dist.*, 911 F. Supp.

16

104, 108 (S.D.N.Y. 1995) (dismissing IDEA claim for tuition reimbursement for future school year that was not raised in administrative proceedings).  As discussed above, *County of San Diego* addressed whether a respondent may raise issues outside of a petitioner's complaint, and answered this question in the negative.

The court also rejects Defendants' contention that the parties otherwise agreed for the Hearings Officer to determine whether the August 7, 2006 IEP offered Student a FAPE.  Both parties included the August 7, 2006 IEP as an exhibit, and witnesses compared the two IEPs.  *See* Defs.' Resp. Br. 8-10 (quoting portions of the hearing transcript).  The August 7, 2006 IEP, as an indicator of what services the May 31, 2006 IEP *could* have offered, was relevant for purposes of determining whether the May 31, 2006 IEP offered Student a FAPE.  *See Metro. Bd. of Public Educ.*, 193 F.3d at 463 ("Evidence arising from events occurring during the 1996-1997 and 1997-1998 school years was properly admitted by the district court, but only for the purpose of deciding whether the proposed IEP for the 1996-1997 school year was reasonably calculated to lead to educational benefits."); *Fuhrmann on behalf of Fuhrmann v. East Hanover Bd. of Educ.*, 993 F.2d 1031, 1040 (3d Cir. 1993) ("[E]vidence of a student's later educational progress may only be considered in determining whether the original

IEP was reasonably calculated to afford some educational benefit"). That does not mean, however, that the parties agreed to litigate whether the August 7, 2006 IEP, with these additional services, offered Student a FAPE. Defendants (and the Hearings Officer[8]) confuse the issues presented with the evidence relevant in determining those issues. Simply put, submitting *evidence* does equal submitting an *issue* to the Hearings Officer.[9]

Finally, the court rejects Defendants' arguments that even if the Hearing Officer did not have subject matter jurisdiction over the August 7, 2006 IEP, such error is harmless because Plaintiffs never challenged the August 7, 2006

---

[8] Defendants mirror the March 23, 2007 Order's explanation for why the August 7, 2006 IEP was before the Hearings Officer:

> In presenting their case, Petitioners relied on the subsequent IEP developed for Student on August 7, 2006. Although the sufficiency of the August 7, 2006 IEP was not raised in Petitioners' August 28, 2006 request for an impartial hearing, Petitioners used the August 7, 2006 IEP and related documents to show how the May 31, 2006 IEP was not an offer of a FAPE. Petitioners and Respondent agreed to have the Hearings Officer consider the August 7, 2006 IEP, and its related documents, as evidence in this matter.

ARA 24, at 100. While the Hearings Officer is entitled to some level of deference, the court rejects this reasoning.

[9] Indeed, both Defendants and the Hearings Officer identified the issue as whether the May 31, 2006 IEP offered Student a FAPE, not whether the May 31, 2006 and August 7, 2006 IEPs offered Student a FAPE. *See* ARA 21, at 58 (identifying the issue as the adequacy of the May 31, 2006 IEP); ARA 24, at 86 (identifying the issue presented as "[w]hether the May 31, 2006 [IEP] offered Student a [FAPE]?").

IEP.[10]  While the 90-day statute of limitations for seeking private tuition reimbursement may have run on the August 7, 2006 IEP, that does not mean that Plaintiffs have conceded that the August 7, 2006 IEP offered Student a FAPE.  To read such preclusive effect from Plaintiffs' failure to challenge the August 7, 2006 IEP would be in error.

For these reasons, the court REVERSES the March 23, 2007 Order to the extent it found that the August 7, 2006 IEP offered Student a FAPE.

## B.    Stay Put

Plaintiffs also argue that Defendants have impermissibly limited their reimbursement of Student's educational expenses in violation of the IDEA's stay put provision.

The IDEA provides that a student should stay in his then-current educational situation during the pendency of any proceedings:

> [D]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of

---

[10]  Defendants also argue that Plaintiffs are prevailing parties, and thus, cannot appeal the March 23, 2007 decision.  The court rejects this argument out of hand.  Plaintiffs are "aggrieved" parties by the March 23, 2007 Order determining that the August 7, 2006 IEP offered Student a FAPE, and therefore properly brought this appeal.

the parents, be placed in the public school program until all
such proceedings have been completed.

20 U.S.C. § 1415(j).  The Ninth Circuit has interpreted this provision as making

"the school district and the state responsible for the costs of [Student's] placement

during the court review proceedings regardless of which party prevails in this

appeal."  *Clovis Unified Sch. Dist. v. Cal. Office of Admin. Hearings*, 903 F.2d

635, 641 (9th Cir. 1990).

Defendants have refused to reimburse Plaintiffs for Private School for

the period of time between the March 23, 2007 Order and service of the Complaint

in this action on August 13, 2007.[11]  Defendants argue that the proceedings were

not pending within the meaning of § 1415(j) because the proceedings were

completed upon receipt of the March 23, 2007 Order, and resumed when service

of the appeal was perfected.[12]

Defendants' argument is unsupported by the plain language of the

IDEA.  Section 1415(j) requires Defendants to reimburse Plaintiffs their expenses

for Student's current educational facility during the pendency of the proceedings.

_____

[11] Federal Rule of Civil Procedure 4(m) provides a plaintiff 120 days to serve a complaint
on the defendant.  Plaintiffs served Defendants with the Complaint within this time period.

[12] Defendants do not dispute that Plaintiffs are entitled to reimbursement for Student's
expenses at Private School during the pendency of this action, and only object to the time period
before they were served the Complaint.

20

Defendants therefore have a duty to reimburse Plaintiffs their expenses at Private School from August 28, 2006 through a final decision in this action.  The IDEA does not carve out any exceptions to this rule for the time between an administrative hearings officer's decision and service of the Complaint in a civil action.  Defendants cite no caselaw to support their position, and this court could find none either.

Further, to accept Defendants' argument would mean that a parent would have to file a civil action and serve the complaint the day after the hearings officer's decision, or face paying the expenses of keeping the student in his then-current educational placement.  Such rule could jeopardize the "unequivocal" language of the IDEA that "the child *shall* remain in the then current educational placement."  *See Honig v. Doe*, 484 U.S. 305, 323 (1988); *see also Beth B. v. Van Clay*, 126 F. Supp. 2d 532, 533 (N.D. Ill. 2006) (noting that "Congress has provided a mandatory 'stay put' requirement").

In any event, Defendants were aware of Plaintiffs' Complaint less than a month after the March 23, 2007 Order.  *See* Pls.' Ex. 1.  Thus, Defendants cannot credibly argue that they had no notice of this action.[13]  Accordingly, the

---

[13]  The court also notes that Plaintiffs delayed serving the Complaint to allow settlement discussions to occur, Peck Decl. ¶ 10, and Defendants agreed during the April 21, 2008 hearing

(continued...)

court finds that Defendants must reimburse Plaintiffs for their Private School

expenses pursuant to the "stay put" provision of the IDEA including the time

between the March 23, 2007 Order and service of the Complaint.

## V.  <u>CONCLUSION</u>

Based on the foregoing, the court REVERSES IN PART the March

23, 2007 Order to the extent it held that the August 7, 2006 IEP offered Student a

FAPE.  The court further ORDERS Defendants to reimburse Plaintiffs pursuant to

the "stay put" provision of the IDEA for their Private School expenses incurred

between the March 23, 2007 Order and service of the Complaint.  Unless

otherwise agreed upon by the parties, Defendants shall make payment as soon as

adminstratively possible after receiving invoices verifying expenses during this

///

///

///

///

///

---

[13](...continued)
that the delay in service was not motivated by bad faith.  Defendants' interpretation of the IDEA
would discourage these types of pre-service settlement discussions.

period.  The court further finds that Plaintiffs are prevailing parties in this action.

The Clerk of Court is directed to close the case.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 30, 2008.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Saki v. State of Hawaii et al.*, Civ. No. 07-00209 JMS/LEK, Order Reversing in Part the Hearings Officer's March 23, 2007 Findings of Fact, Conclusions of Law and Decision, and Ordering Reimbursement Pursuant to Stay Put